

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 2, 2025

**By ECF**

The P. Kevin Castel
United States District Judge
Southern District of New York
Daniel P. Moynihan Courthouse
500 Pearl Street
New York, New York 10007

  Re: *United States v. Hector Noboa Quezada,* 24 Cr. 715 (PKC)

Dear Judge Castel:

  The Government respectfully submits this letter in advance of the defendant's sentencing, currently scheduled to proceed on Wednesday, October 8, 2025. For the reasons set forth below, the Government respectfully requests that the Court impose a below-Guidelines sentence of 72 months' imprisonment. The Government respectfully submits that such a sentence is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing, in particular here, to reflect the seriousness of the offense, to deter the defendant, provide just punishment, and to promote respect for the law.

## Background

  For several months in 2023, the defendant and members of his family, including his father, operated a fentanyl pill mill in the basement of his family home, which he shared with his father, as well as his mother, older sister, and two younger sisters (who were approximately seven and ten years' old at the time). PSR ¶¶ 11-12. The defendant and others made fraudulent prescription pills using fentanyl in the family residence and shipped those pills across the country through the U.S. Post Offices, including to the Bronx and New York, New York. PSR ¶¶ 13-14. The defendant's primarily role in the conspiracy was to package and ship the pills. PSR ¶ 15.

  From the family home, law enforcement officers seized multiple commercial-grade pill presses and scales, tens of thousands of pills, dyeing agents, shipping and packaging materials, and other powder narcotics. PSR ¶ 12. The pills and the powders seized from the defendant's home, later lab-tested positive for almost 12 kilograms of fentanyl.[1] PSR ¶ 16. In connection with

---

[1] Paragraph 16 of the PSR as drafted is imprecise and unclear. It should be revised as follows: "Lab tests determined that some the pills and powders seized from the defendant's residence contained controlled substances and others contained only non-controlled substances. For instance, some of the pills tested positive for acetaminophen-only. The pills and powders that tested positive

their drug trafficking operation, the defendant and his father possessed at least three firearms, one of which was seized from the defendant's bedroom during the search of his residence. PSR ¶ 13, 14. A second firearm was seized from the pill mill (*i.e.*, the basement of the family residence), and a third firearm was seized from a bag that Mr. Quezada's father carried on his person when Mr. Quezada and his father went to a U.S. Post Office to mail packages of narcotics in July 2023. *Id.*

### Procedural History and Guidelines

The defendant and his father Hector Antoino Noboa were arrested on July 13, 2023, after being found in possession of a firearm and pills that later tested-positive for fentanyl, at a post office in Philadelphia Pennsylvania. PSR ¶ 13. On July 14, 2023, Mr. Quezada was charged along with his father Hector Noboa in Complaint 23 Mag. 5506 (the "Complaint") with: (i) conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 ("Count One"); (ii) narcotics distribution, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A), and 18 U.S.C. § 2 ("Count Two"); and (iii) firearms use in furtherance of the offenses charged in Counts One and Two, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 ("Count Three"). (Dkt. No. 1). On March 25, 2025, the defendant waived indictment and pleaded guilty to a Count One of the Information, which charged him with a narcotics conspiracy in violation of Title 18, United States Code, Section 846, pursuant to a plea agreement with the Government. The plea agreement included a Stipulated Guidelines Range of 135 to 168 months' imprisonment. PSR ¶ 7(c)(i).

The PSR calculated the total offense level of 33 and a criminal history of category I, resulting in a Guidelines range at 135 to 168 months imprisonment. PSR at p. 28. The Probation department recommends a below-Guidelines sentence of 72 months' imprisonment. *Id.* The defendant requests a below-Guidelines sentence of three-years' imprisonment. (Def. Sub. at 1).

### Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among

---

for controlled substances, however, tested positive for fentanyl weighing 11,783.13 grams as described below."

defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2). As is relevant here, the Supreme Court has made clear that a sentence of imprisonment cannot be imposed or lengthened due to consideration of rehabilitative opportunities arising from incarceration. *See Tapia v. United States*, 564 U.S. 319, 326-335 (2011).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

## Sentence

The Government respectfully submits that a below-Guidelines sentence of 72 months' imprisonment is "sufficient, but not greater than necessary," to serve the legitimate purposes of sentencing. 18 U.S.C. § 3553(a). The factors particularly applicable here include the need for the sentence to reflect the nature, circumstances, and the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to the defendant and others. 18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, the nature, circumstances, and the seriousness of the offense, and the need to provide just punishment weigh in favor of a significant sentence like the Government seeks here. The defendant and some of his family members operated a fentanyl pill mill, which produced and shipped tens of thousands of counterfeit prescription pills around the country. The defendant himself helped to package and ship those pills, and he and his father both possessed firearms in furtherance of the drug conspiracy. This was a very serious offense.

Page 4

Further, the drugs that the defendant and his co-conspirators sold are highly addictive substances that destroy lives, destabilize communities, and fund (often violent) criminal organizations that supply them. Many people in the community have suffered overdose deaths because of the same type of drug that the defendant sold. In recent years, overdose deaths have been at record levels and are caused primarily by fentanyl,[2] with approximately 72,776 such deaths documented in 2023.[3] The following chart documents the extraordinary rise in overdose deaths attributed to fentanyl in recent years:



Illicit drugs like fentanyl a harm not only its users, but also their family and friends and the broader communities to which they belong. For this reason, major drug crimes are among "the most serious" offenses proscribed by federal law. *United States v. Dillard*, 214 F.3d 88, 101 (2d Cir. 2000); *see also United States v. Colon*, No. 10 Cr. 197 (CM), 2020 WL 4496761, at *2 (S.D.N.Y. Aug. 4, 2020) (describing cocaine as "a highly addictive drug that destroys lives, families, and communities"); *United States v. Qayyem*, No. 10 Cr. 19 (KMW), 2012 WL 92287,

---

[2] *See Fentanyl Helps Push Overdose Deaths to Record Level in New York City*, N.Y. Times, Jan. 13, 2023, *available at* (https://www.nytimes.com/2023/01/13/nyregion/new-york-overdose-record.html).

[3] *Drug Overdose Deaths*, National Institute on Drug Abuse, *available at* https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates#Fig2 (last visited October 2, 2025).

at *4 (S.D.N.Y. Jan. 11, 2012) (describing study in preeminent medical journal in which cocaine was found to have "second-highest mean harm score of all twenty drugs [under study], after heroin"). The defendant chose to traffic fentanyl notwithstanding the fact that New York City and the nation are in the grips of the deadliest drug epidemic in U.S history. In these circumstances, imposing a sentence that is equal to the seriousness of the conduct would send a message to the public that such crimes will result in significant consequences. *See, e.g., United States v. Benitez*, No. 18-CR-390 (PAE), 2020 WL 4226590, at *3–4 (S.D.N.Y. July 23, 2020) ("Heroin dealing, including heroin laced with fentanyl, is [an] epidemic in this city and in this country, and so it's important that the message go out from the sentencings in these cases, taken as a whole, that there will be serious consequences and meaningful jail time for people who distribute such drugs[.]"). And a significant sentence is just given the defendant's decision to feed and even profit from this public health crisis.

Next, a substantial sentence like the one the Government seeks here is necessary to deter the defendant and those similarly situated to the defendant, and to promote respect for the law. Far too many people, like the defendant, put themselves and the community at great risk for little profit. The defendant packaged and shipped deadly fentanyl around the country, and he and his co-conspirators possessed firearms while doing so. He put not only the recipients of the pills in danger but also his family, including his younger sisters who lived in the home with these deadly substances. The defendant did not think about the consequences of his actions, and thus a substantial sentence like 72 months' imprisonment is needed to promote his respect for the law.

The defendant seeks a three-year sentence, for among other reasons, his age, lack of criminal history, his intellectual challenges, his lower relative culpability, his father's role in the conspiracy, and his unmarred conduct on pretrial release. While these circumstances are mitigating, and do support a below-Guidelines sentence, these circumstances do not justify the three-year sentence the defendant seeks. The defendant's conduct was very serious and requires serious consequences like a 72-month sentence that the Government and the Probation office recommends.

## **Conclusion**

      For the reasons set forth above, the Government submits that a below-Guidelines sentence of 72 months' imprisonment is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

      Respectfully,

      JAY CLAYTON
      United States Attorney

By: _____/s/_____
      Camille L. Fletcher
      Assistant United States Attorney
      (212) 637-2383

cc: Counsel of Record (by ECF)